**Antonio E. LEE, Petitioner–Appellant,**

v.

**James MURPHY, Respondent–Appellee.**

**No. 94–2223.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 14, 1994.

Decided Nov. 28, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied Dec. 20, 1994.

Richard L. Zaffiro, Wauwatosa, WI (argued), for petitioner-appellant.

Daniel J. O'Brien, Asst. Atty. Gen., Wisconsin Dept. of Justice, Madison, WI (argued), for respondent-appellee.

Before GODBOLD,* WOOD and COFFEY, Circuit Judges.

GODBOLD, Circuit Judge.

Antonio Lee was convicted in Wisconsin state court of first degree intentional homicide, § 940.01(1) Wis.Stats., and sentenced to life imprisonment without parole. He was given a post-conviction hearing in the trial court with new counsel, and relief was denied. The Wisconsin Court of Appeals affirmed, 168 Wis.2d 776, 486 N.W.2d 37 (1992), and the Supreme Court of Wisconsin denied a petition for review. The United States district court, E.D. Wisconsin, denied Lee's petition for habeas corpus. We affirm.

The issues raised with this court center around the fact that Lee did not testify in his own defense. Summarizing, his contentions are:

(1) He did not make a knowing, voluntary, and effective waiver of the right to testify in his own defense.

(2) His counsel was ineffective for several reasons. He did not properly advise Lee concerning waiver. Counsel pursued a trial strategy that Lee was guilty but of only reckless homicide when he should have asserted that Lee was not guilty because he acted in self-defense. He failed to interview corroborating witnesses.

(3) He was denied due process by the trial court's refusal to grant him a new trial on the basis of newly discovered evidence.

---

* The Honorable John C. Godbold, Circuit Judge for the United States Court of Appeals for the Eleventh Circuit, is sitting by designation.

(4) In the interest of justice he is entitled to a new trial because the real controversy—whether he acted in self-defense—has not been tried.

These grounds were rejected by the state trial court, or the state court of appeals, or both.

(5) Lee has raised as an additional ground that the district court erred in giving deference to factual findings of the state courts because, under 28 U.S.C. § 2254(d), the fact-finding procedures were not adequate, the material facts were not adequately developed, and Lee did not get a full, fair and adequate hearing in state court.

The district court deferred to state court findings on the historical facts and found against Lee on all issues. The state concedes exhaustion.

## I. EVIDENCE AGAINST LEE

The evidence against Lee was powerful. It was not disputed that Lee shot Bobby Compton, and there were no substantial differences in the testimony concerning the occurrence. Lee came to the house of his former girlfriend, who was the mother of his child, to visit the child. He left to go to a bar with friends. He returned under the influence of alcohol. En route he flashed his .38 caliber revolver in the street and fired a shot in the air. When he reached the house, around 1:00–3:00 a.m., Compton, the current boyfriend, was there, and a loud verbal confrontation ensued between them beginning in the house and continuing in the front yard. Compton was unarmed. Compton went to his car, according to some of the testimony to turn down the volume on the radio. He came back in the direction of the house. Lee threatened to blow his brains out. Compton walked toward his car again, and then Lee shot him in the back of the head from short range and shot him a second time in the lower abdomen near the groin. Lee then went to Compton's car and "leaned" into it. Lee returned to the house, where he described Compton with a string of obscenities. Then, using more obscenities, he grabbed the former girlfriend by the neck, put his pistol to her throat or face, and told her that if she did not "straighten up", she would be next. He threatened to kill others inside the house if they told police where he lived. He fled but within a few hours turned himself in to police.

Police searched Compton's car and found no weapon.

All available eyewitnesses, other than Lee himself, testified for the prosecution.

## II. DEFENSE/RECKLESS HOMICIDE

■ Understanding this case requires understanding the Wisconsin law concerning self-defense. A Wisconsin defendant charged with first degree intentional homicide may assert self-defense as an absolute defense. Or he may assert "imperfect self-defense," which implicates his reasonable belief that he was necessarily exerting force to prevent or terminate an unlawful interference with his person. But, since these two defenses implicate the defendant's state of mind, he may not assert either unless he takes the stand and testifies concerning his state of mind. Or the defendant, even though he does not take the stand, can seek to have the jury decide that, if he is guilty, it is only of the lesser included offense of reckless homicide.

## III. THE DEFENSE STRATEGY AND THE TRIAL

By motion made before taking of testimony began, defense counsel sought approval to introduce evidence of prior criminal acts by Compton, as tending to show character for violence, without Lee having to testify. The court did not then deny the motion but noted that evidence of prior criminal acts of violence would be relevant only to the extent it was known to defendant and thus bore on his intent, and it observed that it was not clear how counsel proposed to bring in the violent character evidence without Lee's taking the stand. Later in the trial defense counsel twice renewed the motion, offering to prove Lee's state of mind at the time of the altercation by having him testify outside the presence of the jury, thereby establishing a basis for the court to admit the evidence of Compton's criminal record. The court declined.

The habeas court recognized that defense counsel was trying to do what was not permitted under Wisconsin law, that is introduce a theory of self-defense without the defendant's testifying at trial.

His effort having been unsuccessful, defense counsel concluded that the best defense strategy was that Lee should not take the stand and self-defense should not be asserted, but rather he would seek jury instructions on reckless homicide and would argue to the jury that the evidence showed only reckless homicide and not intentional murder.[1]

After the prosecution rested, counsel asked for a recess to confer with his client. The court declared a recess and instructed that counsel should discuss with Lee his right to testify. After a recess, found by the district court to be 30 to 45 minutes, the following occurred in open court:

> MR. BERMAN (Defense Counsel): The record should reflect that Mr. Lee is now present in the courtroom. I want the record to also reflect that we've taken this break and discussed this thoroughly with Mr. Lee. This was discussed thoroughly with Mr. Lee this morning as well as discussion that he and I had in the county jail previous to this, and it's his decision at this time that he desires not to take the witness stand. This is being done with my assistance and my advice.

> He has been thoroughly explained all of his options and he certainly has the right to testify. He has the right to tell the jury his side of the story. I, as his counsel, I believe I have an obligation to weigh the various factors that could be created by him testifying and I believe that it's my advice to him that he not do so and he has decided to follow that advice totally of his own free will and knowing exactly what he is doing, particularly with the Court in-

structing him just prior to this that he has the right to testify. Is that right, Antonio?

> THE DEFENDANT: Yes.

> MR. BERMAN: You're saying yes to your not wishing to testify?

> THE DEFENDANT: Yes.

> THE COURT: Based upon that, the Court declares that the case is closed, that all the evidence is in. We'll proceed to the instruction phase to have a conference on the instructions to be given as well as the form of verdicts.

Tr. 54–55.

The defense offered no evidence. In the charge conference that followed the court, after referring to the evidence, stated that "the question of self-defense does not appear to enter into the picture." (Tr. 57). The court at first indicated that it would not give an instruction on reckless homicide, but defense counsel insisted and described what he viewed as possible mitigating factors that might lead the jury to reach that result: the argument, the fact that Compton went to his car more than once, and the possibility that Lee might have felt there was a weapon in the car and that he had to shoot first or be shot. The court reluctantly agreed to give a reckless homicide instruction and announced that it would submit the case to the jury with three possible verdicts: first degree intentional homicide, reckless homicide, and not guilty, and later it did so.

Before adjourning the charge conference, the trial court commented:

> Frankly, Mr. Berman, I think that your representation of the defendant's cause has been very good, although there wasn't an awful lot that you could do under the circumstances and if at anytime there is a review of this case by the Court of Appeals or anyone else, I wish to call attention to the fact that the State simply had a very strong case with very strong witnesses and

---

1. At the state court evidentiary hearing counsel referred to a second basis for his strategy. He proposed to assert on appeal that the Wisconsin rule requiring a defendant to take the stand as a prerequisite to asserting self-defense, or imperfect self-defense, should be overruled, and he laid the necessary ground work for this. Lee contends that this intention was so lacking in possi-

bility of success that counsel's entertaining it was itself ineffective. Because other reasons we discuss in text support counsel's choice, we do not need to address whether, if the hope of reversal were the only basis for counsel's strategy, his choice would have constituted ineffective counsel.

the opportunity to impeach the witnesses seemed to be extremely remote.

(Tr. 61).

Counsel did not ask the jury to find Lee not guilty of homicide, since it was undisputed that he killed Compton. He pointed to the argument, the fighting on the street, and to evidence that Lee backed up when Compton came back from Lee's car, and to the fact that Lee turned himself in to police. Then he argued that the case fitted better in the category of reckless homicide than of intentional homicide.

## IV.  STATE POST–CONVICTION

The trial court conducted a post-conviction hearing at which Lee had new counsel. Trial counsel and Lee testified. Lee acknowledged that he followed counsel's advice not to testify. The court found that to put Lee on the stand would have been a "very dangerous and desperate thing to do." It quoted the complimentary remarks, set out above, that it had made at the charge conference. Defendant's motion was denied.

The Wisconsin Court of Appeals, in an unpublished opinion, addressed and rejected all claims made to us except number (5) above. The Wisconsin Supreme Court refused review.

## V.  FEDERAL HABEAS

■ The district court did not conduct an additional hearing but accepted underlying findings of fact by the trial court and the Court of Appeals. With respect to voluntariness of Lee's waiver, the court considered this *de novo* as a question of law. It found that there was only a bare assertion that counsel ordered Lee not to testify. There is a presumption against waiver, but it was overcome in this case. The overwhelming evidence demonstrated that counsel did confer with Lee both before and at trial. Lee admitted at the post-conviction hearing that, before he [Lee] made the decision not to testify, counsel told him of the reasons why he should not testify. (Tr. 65). In open court at the trial Lee acknowledged his waiver.

The federal court considered each part of the ineffective counsel claim. It found that counsel abandoned self-defense as a theory once the court ruled that Lee must take the stand, and that in doing so counsel exercised his "strategic/tactical discretion" and that this was a reasonably competent choice. Pursuing a reckless homicide theory was, as the court put it, "a long shot" but reasonably pursued as against self-defense, "an even longer shot." In the state court hearing counsel had explained his fear that testimony by Lee would have a negative effect on the jury because it would reveal his lack of remorse and his attitude toward Compton and would adversely affect the trial court's setting of parole eligibility. The district court considered Lee's testimony at the state hearing and his demeanor as revealed by the record and concluded that counsel's fears of putting him on the witness stand were justified. Additionally, there was evidence from which the jury could infer that the shot to Compton's groin area was inflicted when Compton, with his head already shattered, was lying on his back on the ground. Also, the trial court had observed in the post-conviction order that to put Lee on the witness stand would have been "a difficult and dangerous thing to do."

■ Issue (4) has no merit, based on what we have said about (1) and (2). The newly discovered evidence claim, issue (3), and the alleged failure to interview witnesses asserted as part of ineffective counsel, relate to Lee's claim that three witnesses (two of them members of his family) would testify that, after the shooting, he made statements to them that tended to exculpate him of intent to kill, and that counsel did not interview them. The evidence was not newly discovered. The statements were allegedly made by Lee himself and, as the state appellate court put it, "he should remember what he said." Moreover, the court held that the statements were inadmissible hearsay if offered as evidence that Lee killed Compton in self-defense. The state Court of Appeals rejected Lee's theory that the statements were admissible as excited utterances under § 908.03(2), Wis.Stats. Substantial time—for at least one witness more than six hours—had elapsed since the shooting so that the undergirding

element of trustworthiness did not exist. A newly-discovered evidence claim can be so compelling that denial of it violates Fourteenth Amendment due process. *Coogan v. McCaughtry*, 958 F.2d 793 (7th Cir.1992). The federal court did not err in holding that neither the Wisconsin rule of evidence, nor its application to this case, violates any federal constitutional right.

Lee spells out a theory that if counsel had investigated and found the evidence of the statements made by Lee he would have offered them at trial, and under Wisconsin law (correctly applied as Lee sees it) it would have been admitted, and then the state of the evidence would have required counsel to assert self-defense and to advise Lee to take the stand and testify. For reasons we have set out this fails at many points.

In *Chambers v. Armontrout*, 907 F.2d 825 (8th Cir.1990) (en banc) the Eighth Circuit granted the writ based on ineffectiveness of counsel in the retrial of a murder case. Defense counsel was aware of the testimony of a particular witness who had testified at the first trial, but he neither interviewed him nor called him because he believed that damaging aspects of his testimony outweighed its value. The court held that counsel was ineffective because the only defense available to the defendant was self-defense, and the witness in question was the only witness who could support that defense. Lacking that testimony, the court refused to give an instruction to the jury on self-defense or to permit counsel to argue it to the jury. In the case before us Lee is the only witness available to testify concerning the intent element of self-defense, but in a reasonable strategic decision, counsel recommended to his client that he not testify because of the possible adverse consequences of his doing so and, after receiving that advice, Lee waived his right to testify.

The district court did not err in deferring to state court findings of fact, see issue (5). At the post-conviction hearing Lee was represented by new counsel. Lee and his trial counsel testified and fully explained the waiver/self-defense/reckless homicide issues. The court noted what had occurred in open court at trial concerning waiver. It heard testimony from Lee's mother, and an offer of proof from two other witnesses, concerning Lee's post-incident exculpatory statements about his intent, and held this evidence inadmissible. The court's rulings on this evidence did not cause the hearing not to comply with § 2254. The fact-finding procedures were adequate. The facts were sufficiently developed and were fairly supported by the evidence, and Lee received full, fair and adequate hearings in the state courts.

The judgment of the district court denying habeas corpus is AFFIRMED.