# 2020 WI App 50

# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.:      2018AP2318-CR

†Petition for Review filed

Complete Title of Case:

**STATE OF WISCONSIN,**

      **PLAINTIFF-RESPONDENT,†**

   **V.**

**ALAN M. JOHNSON,**

      **DEFENDANT-APPELLANT.**

| | |
|---|---|
| Opinion Filed: | July 8, 2020 |
| Submitted on Briefs: | February 6, 2020 |
| Oral Argument: | |

| | |
|---|---|
| JUDGES: | Neubauer, C.J., Reilly, P.J., and Davis, J. |
| Concurred: | |
| Dissented: | |

| | |
|---|---|
| Appellant<br>ATTORNEYS: | On behalf of the defendant-appellant, the cause was submitted on the briefs of *Stephen P. Hurley, Jonas B. Bednarek,* and *Marcus J. Berghahn* of *Hurley Burish, S.C.*, Madison. |
| Respondent<br>ATTORNEYS: | On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Hannah S. Jurss*, assistant attorney general, and *Joshua L. Kaul*, attorney general. |

COURT OF APPEALS
DECISION
DATED AND FILED

July 8, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP2318-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. **2016CF422**

**IN COURT OF APPEALS**

STATE OF WISCONSIN,

  PLAINTIFF-RESPONDENT,

V.

ALAN M. JOHNSON,

  DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Walworth County: KRISTINE E. DRETTWAN, Judge. *Reversed and cause remanded with directions*.

Before Neubauer, C.J., Reilly, P.J., and Davis, J.

¶1 REILLY, P.J. Alan M. Johnson appeals from a judgment convicting him following a jury trial of first-degree reckless homicide with use of a dangerous weapon. Johnson shot and killed his brother-in-law, K.M., on October 25, 2016, in K.M.'s home. Johnson claimed self-defense in killing K.M. and requested a jury

instruction on perfect self-defense. The court refused. Johnson also requested the lesser-included offenses of first-degree reckless homicide, second-degree reckless homicide, and negligent homicide with a dangerous weapon to the State's charges of first-degree intentional homicide and burglary. The court refused to give the lesser-included offenses of second-degree reckless homicide and negligent homicide. Johnson was acquitted of first and second-degree intentional homicide and burglary but found guilty of first-degree reckless homicide.

¶2    This case involves whether the privilege of perfect self-defense exists in the factual context of a trespasser (Johnson) who kills a homeowner (K.M.) to allegedly thwart an attack by the homeowner. This factual scenario brings into play Wisconsin's so-called "castle doctrine" under WIS. STAT. § 939.48(1m) and specifically raises the question of whether a trespasser can have a "reasonable belief" of an "unlawful interference" by a homeowner.

¶3    Johnson claims that the circuit court (1) erred in refusing to instruct the jury on perfect self-defense,[1] (2) erred in refusing to give lesser-included offenses, (3) erred by requiring Johnson to establish a factual basis for self-defense through his own testimony before allowing supporting evidence of self-defense, and (4) erred in refusing to allow other-acts evidence that Johnson found child pornography on K.M.'s computer on October 25, 2016. As the jury was presented with evidence supporting both perfect self-defense and second-degree reckless

---

[1] Self-defense in the realm of intentional homicides has two categories: perfect self-defense and imperfect self-defense. Proof of perfect self-defense provides a complete exoneration of criminal liability, whereas proof of imperfect self-defense does not exonerate criminal liability, it mitigates culpability. *State v. Head*, 2002 WI 99, ¶¶66, 85, 255 Wis. 2d 194, 648 N.W.2d 413. The State conceded that imperfect self-defense was appropriate in this case.

homicide and the other-acts evidence was improperly excluded, we reverse and remand for a new trial.

¶4      We begin with a discussion of the pertinent facts, then analyze the law of perfect self-defense as impacted by the castle doctrine when a trespasser claims the privilege of self-defense for killing a homeowner, then address the court's refusal to instruct on the lesser-included homicide charges, and conclude by analyzing the court's refusal to allow into evidence K.M.'s possession of child pornography.

## I. Factual Background

¶5      K.M. was married to Johnson's second oldest sister, Kim, who is eleven years older than Johnson. Johnson testified that going back to his youth, he was repeatedly physically abused by K.M. and on one occasion was sexually abused. Johnson also witnessed K.M. physically abuse his youngest sister, Nicole, as well as Kim and K.M.'s son, Tyler. Years prior to K.M.'s death, Johnson found child pornography on K.M.'s computer and later reported it to the police, but Johnson was told the evidence was "stale" and that police would need recent evidence of K.M.'s possession of child pornography to do anything. Johnson told his father, a retired sheriff/police chief, about K.M. having child pornography, and his father confronted K.M. about the child pornography and told K.M. that he was no longer welcome at family events. K.M. did not deny that he had child pornography and told his father-in-law he would "move[]" it and get counseling. K.M. never got counseling, and Johnson believed that K.M. never "moved" or destroyed the child pornography. Johnson was fearful that K.M. would abuse Nicole's two young daughters.

¶6    Nicole testified that she was eight years old when her sister married K.M. She explained that K.M. was violent with her beginning at that age, and when she was fourteen, K.M. "choked me until I blacked out." On other occasions, K.M. would pull her into his lap and rest his head on her chest: "He would pull me onto the couch and basically be on top of me and not let me up. He would tickle me and his hand would go up my shirt." Nicole testified that K.M. was a violent man that she feared, and she was concerned to have her two daughters, ages one and six at the time of trial, around K.M.

¶7    Johnson's oldest sister, Christina, testified that she met K.M. in high school and that K.M. "was a violent person." According to Christina, Johnson was afraid of K.M., and Nicole feared K.M. Christina testified that Nicole kept her children away from K.M.

¶8    Johnson testified that on October 24, 2016, he decided to go to K.M.'s home to see if child pornography was still on the computer so as to notify police. Johnson went "uninvited" to K.M.'s home at approximately 11:45 p.m. Johnson testified that he brought a loaded gun with him for protection as he knew that if K.M. discovered him looking at the computer "[t]hat he was going to come after me, he was going to make sure that no one ever found out about what was on there." Johnson knew that K.M. did not lock his home, so he entered through a back door and worked quietly in the dark in K.M.'s computer room for approximately two and one-half hours. Johnson found child pornography on K.M.'s computer.

¶9    Shortly after 2:00 a.m. on October 25, 2016, Johnson heard a noise and turned and saw K.M. open the door to the computer room: "He looked right at me. He knew who I was." Johnson testified that K.M. knew that "I had the

4

pornography, that I—that he was—he was going to prison, that I had him."[2]  K.M. closed the door to the computer room.  Johnson, in fear and cognizant that he could not escape from the room, waited a brief time before "the door flew open and [K.M.] attacked me."  Johnson testified that after K.M. "attacked"/"lunged" at him that he could not remember what happened thereafter.[3]  K.M. died of his injuries.

¶10    Following receipt of Johnson's testimony, counsel asked, outside the presence of the jury, for a ruling that Johnson had met his burden of proof for self-defense.  The circuit court ruled that Johnson had met his burden as to self-defense and allowed Johnson to admit *McMorris*[4] evidence.

¶11    Despite ruling that Johnson presented sufficient evidence to assert self-defense, the court changed course at the close of evidence and refused to instruct the jury on perfect self-defense.  The court noted that the castle doctrine was not directly applicable, as it would apply to K.M. had he used lethal force on Johnson, but was relevant for consideration of "self-defense" and "provocation."  After considering the issue, the court found that no objective reasonable person would find that the victim did not have a lawful right to interfere, i.e., that Johnson

---

[2]  Possession of child pornography, pursuant to WIS. STAT. § 948.12, subjects a person to twenty-five years in prison, and each image they possess can be prosecuted separately, *State v. Multaler*, 2002 WI 35, 252 Wis. 2d 54, 643 N.W.2d 437, with a minimum period of confinement of three years, WIS. STAT. § 939.617(1).

[3]  K.M. was shot five times:  three in the front, once in the back, and once in the head.

[4]  *McMorris v. State*, 58 Wis. 2d 144, 205 N.W.2d 559 (1973).  *McMorris* evidence is evidence of specific instances of the victim's "turbulent and violent character" known to the defendant at the time of the incident in support of a defendant's self-defense claim.  *Id.* at 152.  "*McMorris* evidence may not be used to support an inference about the victim's actual conduct during the incident."  *Head*, 255 Wis. 2d 194, ¶128.  But "[i]t may be admitted because it 'bears on the reasonableness of the defendant's apprehension of danger at the time of the incident.'"  *Id.* (citation omitted).

did not have a reasonable belief that K.M. was unlawfully interfering with Johnson as a trespasser in his home, and therefore, it could not be said that the defendant was preventing an unlawful interference.[5] The court additionally stated:

> [T]he question is would an objective person find that he reasonably believed that the force used was necessary to prevent imminent death or great bodily harm, and there's nothing in the record that supports that, especially because the force that was used was five shots from a gun when the victim was naked from the waist up and had no weapon. So *I don't think a jury* would conclude that the State had failed to meet its burden to disprove that element either. So for those reasons I will not allow those instructions that deal with perfect self-defense.

(Emphasis added.) For the reasons that follow, we conclude that the court erred.

## II. Perfect Self-Defense

¶12    "To raise the issue of perfect self-defense, a defendant must meet a reasonable objective threshold." **State v. Head**, 2002 WI 99, ¶84, 255 Wis. 2d 194, 648 N.W.2d 413. Sufficient evidence must show: "(1) a reasonable belief in the existence of an unlawful interference; and (2) a reasonable belief that the amount of force the person intentionally used was necessary to prevent or terminate the interference." *Id.*; *see also* WIS. STAT. § 939.48(1) (2017-18).[6]

¶13    The right to assert the privilege of perfect self-defense is a statutory right under WIS. STAT. § 939.48(1), which provides that a person is privileged to threaten or intentionally use force against another for the purpose of preventing or terminating what the person "reasonably believes" to be an "unlawful interference"

---

[5] The State argued that as Johnson was a trespasser, K.M. would have every legal right to kill Johnson under the castle doctrine, claiming that no reasonable person would think Johnson has a "right to kill the person who has the lawful right to kill" him.

[6] All references to the Wisconsin Statutes are to the 2017-18 version.

with his or her person by the other person. Wisconsin has a "low bar" that an accused must overcome to be entitled to a jury instruction on the privilege of self-defense. *State v. Stietz*, 2017 WI 58, ¶16, 375 Wis. 2d 572, 895 N.W.2d 796 (citation omitted). "The accused need produce only 'some evidence' in support of the privilege of self-defense." *Id.* (citation omitted). "Evidence satisfies the 'some evidence' quantum of evidence even if it is 'weak, insufficient, inconsistent, or of doubtful credibility' or 'slight.'" *Id.*, ¶17 (citation omitted).

¶14   "Crucial to applying the 'some evidence' standard is that a court is not to weigh the evidence. A court does not 'look to the totality of the evidence,' as that 'would require the court to weigh the evidence—accepting one version of facts, rejecting another—and thus invade the province of the jury.'" *Id.*, ¶18 (citations omitted). Instead, where a self-defense claim is put forth, the reasonableness of the defendant's actions "is a question peculiarly within the province of the jury." *Id.* (citation omitted). Whether sufficient facts exist to warrant instructing a jury on self-defense is a question of law that we decide independently of the circuit court. *Id.*, ¶14.

### A. *Perfect Self-Defense: Trespasser/Provocation*

¶15   A trespasser's right to claim the privilege of perfect self-defense is statutorily restricted by WIS. STAT. § 939.48(2)(a). "A person who engages in unlawful conduct of a type likely to provoke others to attack him or her and thereby does provoke an attack," i.e., Johnson trespassing in K.M.'s home at 2:00 a.m., is not entitled to claim the privilege of self-defense against an attack "except when the attack which ensues is of a type causing the person engaging in the unlawful conduct to reasonably believe that he or she is in imminent danger of death or great bodily harm." Sec. 939.48(2)(a). The trespasser is not privileged to

resort to the use of force intended or likely to cause death unless the trespasser has: (1) a reasonable belief in the existence of an unlawful interference with his or her person, § 939.48(1); (2) a reasonable belief that the amount of force the person intentionally used was necessary to prevent or terminate the interference, § 939.48(1); and (3) a reasonable belief "he or she has exhausted every other reasonable means to escape from or otherwise avoid death or great bodily harm at the hands of his or her assailant," § 939.48(2)(a).

¶16   As a threshold matter, then, we must resolve the question of whether Johnson could legally have a reasonable belief that K.M. was engaged in an "unlawful interference" on October 25, 2016.  This necessarily requires us to consider whether the castle doctrine precludes Johnson from asserting perfect self-defense, i.e., can a trespasser ever have a reasonable belief that a homeowner is engaging in an "unlawful interference" with the trespasser?[7]

*B. Perfect Self-Defense: Unlawful Interference And The Castle Doctrine*

¶17   The castle doctrine, codified at WIS. STAT. § 939.48(1m), is intended to provide a homeowner, such as K.M., a privilege to use lethal force in defending against an unlawful and forcible entry into the homeowner's dwelling, automobile, or place of business.  The castle doctrine provides that a court/jury cannot consider whether a homeowner had "an opportunity to flee or retreat" before utilizing force. Sec. 939.48(1m)(ar).  In our situation Johnson (the trespasser) is asserting the

---

[7] The castle doctrine ordinarily applies as a specific form of self-defense to homeowners who use lethal force against trespassers.  It necessarily comes into play in this case to inform the inquiry into whether a trespasser's use of such force against a homeowner can be based on the trespasser's "reasonable belief" that such force is necessary to terminate an "unlawful interference" with the trespasser's person.

privilege of self-defense, which raises the question of whether the castle doctrine negates a trespasser's claim of a reasonable belief that the homeowner was engaged in "an unlawful interference with his or her person." Sec. 939.48(1). Johnson is presumed to know the law,[8] and, therefore, Johnson is presumed to know that K.M.'s attack was not an unlawful interference with Johnson's person *if* K.M. was entitled to the presumption of the castle doctrine. The castle doctrine represents a public policy determination by the legislature that homeowners ordinarily do not have a duty to retreat from trespassers and, when lethal force is used, are entitled to a presumption that the homeowner reasonably believed that such force was necessary to prevent imminent death or great bodily harm to himself or herself.[9]

---

[8] *See* **State v. Collova**, 79 Wis. 2d 473, 488, 255 N.W.2d 581 (1977).

[9] The castle doctrine provision states in part as follows:

> (ar) If an actor intentionally used force that was intended or likely to cause death or great bodily harm, the court may not consider whether the actor had an opportunity to flee or retreat before he or she used force and shall presume that the actor reasonably believed that the force was necessary to prevent imminent death or great bodily harm to himself or herself if the actor makes such a claim under sub. (1) and either of the following applies:

> 1. The person against whom the force was used was in the process of unlawfully and forcibly entering the actor's dwelling, motor vehicle, or place of business, the actor was present in the dwelling, motor vehicle, or place of business, and the actor knew or reasonably believed that an unlawful and forcible entry was occurring.

> 2. The person against whom the force was used was in the actor's dwelling, motor vehicle, or place of business after unlawfully and forcibly entering it, the actor was present in the dwelling, motor vehicle, or place of business, and the actor knew or reasonably believed that the person had unlawfully and forcibly entered the dwelling, motor vehicle, or place of business.

¶18     We begin by noting that the privilege to use force under the castle doctrine creates a "presumption" rather than a legal "right." The castle doctrine is a presumption that a homeowner (K.M.) "reasonably believed" that force was necessary to prevent death or great bodily harm to himself. WIS. STAT. § 939.48(1m)(ar). The castle doctrine presumption does not apply, however, if "[t]he actor was engaged in a criminal activity or was using his … dwelling … to further a criminal activity at the time." Sec. 939.48(1m)(b)1.

¶19     Here, the circuit court based its denial of a self-defense instruction on its determination that K.M. had no duty to retreat (after he shut the door, he was privileged to open it and charge back in at Johnson), and he was entitled to the presumption that lethal force against Johnson would have been appropriate (given that Johnson had a gun), such that Johnson had no reasonable belief that K.M. was engaged in an unlawful interference. The court rejected Johnson's defense theory that the castle doctrine did not apply because K.M. was engaged in illegal activity— possession of child pornography.

¶20     The circuit court's conclusion that Johnson had no reasonable belief that K.M. was engaged in an unlawful interference was not necessarily wrong; the problem lies in the very fact that it was the circuit court, rather than the jury, that weighed the evidence and resolved the inferences needed to reach that conclusion.

---

(b) The presumption described in par. (ar) does not apply if any of the following applies:

1. The actor was engaged in a criminal activity or was using his or her dwelling, motor vehicle, or place of business to further a criminal activity at the time.

WIS. STAT. § 939.48(1m)(ar), (b).

10

¶21 We conclude that under the unique facts of this case, whether Johnson was entitled to the castle doctrine presumption is a jury issue. Given the facts presented, a reasonable fact finder could conclude that Johnson reasonably believed that K.M. was unlawfully interfering with his person, and that K.M.'s purpose in attacking Johnson was not because he viewed it as "necessary to prevent imminent death or great bodily harm" to himself but rather because he wanted to prevent Johnson from reporting his ongoing criminal activity of possession of child pornography, or perhaps in a fit of rage over the fact that such activity had been discovered. If a jury concludes that Johnson had such a belief, and that it was reasonable, then the castle doctrine, which is otherwise presumed to make K.M.'s conduct lawful, would not preclude Johnson from invoking perfect self-defense.[10]

### C. "Some Evidence" Supports Johnson's Claim That His Use of Deadly Force Was For The Purpose Of Terminating What He "Reasonably Believed" Was An "Unlawful Interference With His Person"

¶22 Having set forth the pertinent facts and law of perfect self-defense, we apply the law to the facts. We are required to view the record in the light most favorable to Johnson and to focus on the encounter from his perspective. *Stietz*, 375 Wis. 2d 572, ¶5 & n.6, ¶22. We assess whether a reasonable jury could find that a

---

[10] We do not find that the castle doctrine may be found inapplicable any time a homeowner has illegal material in his residence at the time of an unlawful and forcible entry by another. While the language could be read that way, and seemingly has in a few jurisdictions, we do not do so here. Construing similar language contained in Stand Your Ground statutes, some courts have denied the statute's protection to any defendant who was engaged in criminal activity without regard to any nexus between that activity and the reason for the use of force. *See, e.g.*, *Dorsey v. State*, 74 So. 3d 521, 527 (Fla. Dist. Ct. App. 2011) (defendant barred from firearm possession could not invoke Stand Your Ground law); *Dawkins v. State*, 2011 OK CR 1, ¶11, 252 P.3d 214 (noting that "possession of illegal drugs on the premises" would preclude application of Stand Your Ground law).

We conclude that there must be some connection/nexus between the criminal activity and the homeowner/actor's use of force. If such a criminal connection/nexus is established, the presumption in WIS. STAT. § 939.48(1m)(ar) that the actor's conduct was lawful can be rebutted.

person in the position of Johnson, under the circumstances existing shortly after 2:00 a.m. on October 25, 2016, could reasonably believe that he was exercising the privilege of self-defense. Therefore, if "some evidence" existed that Johnson reasonably believed that K.M. was unlawfully interfering with his person, that he used such force as he reasonably believed necessary to prevent or terminate the interference, and that he reasonably believed he had exhausted every other reasonable means to escape from or to otherwise avoid death or great bodily harm at the hands of K.M., "then it is for the jury, not for the [circuit] court or this court, to determine whether to believe [Johnson's] version of events." *See id.*, ¶19 (first alteration in original; citation omitted).

¶23      In denying Johnson's request to instruct the jury on perfect self-defense, the court found that K.M. had no weapon, was shot five times, and was naked from the waist up. The conclusions to draw from the number of shots fired and the significance, if any, of K.M. being clothed or partially clothed and whether K.M. had a weapon are for the jury to weigh with all the other evidence to determine whether Johnson "reasonably" believed that K.M. was engaged in an "unlawful interference" of his person. The court, in making its own determination of whether it considered Johnson's beliefs to be reasonable, improperly weighed the evidence. *Id.*, ¶18.

¶24      "[T]he question of reasonableness of a person's actions and beliefs, when a claim of self-defense is asserted, is a question peculiarly within the province of the jury." *Id.* (citation omitted). We are reminded of a quote from Justice Oliver Wendell Holmes, Jr.: "Detached reflection cannot be demanded in the presence of an uplifted knife." **Brown v. United States**, 256 U.S. 335, 343 (1921). It was for the members of the jury—bringing whatever real world experiences they might

have—to consider the reasonableness of Johnson's actions under the circumstances that existed in K.M.'s home shortly after 2:00 a.m. on October 25, 2016.

¶25 The State contends that it has disproved beyond a reasonable doubt Johnson's self-defense argument that he reasonably believed the amount of force he used was necessary to prevent K.M.'s attack, because he did not remember what happened after K.M. lunged at him. We disagree. This too is a question for the jury in light of the totality of the facts, including those leading up to the shooting, and not only the facts about the moment of the shooting. Whether Johnson's testimony is credible, what are the implications of five shots, etc., are all facts to be weighed by the jury.

¶26 We agree with the court's initial conclusion that Johnson had presented enough evidence ("some evidence") to allow Johnson to present *McMorris* evidence. Johnson then presented that *McMorris* evidence from Nicole and Christina. The *McMorris* evidence only bolstered the sufficient "some evidence" that came solely from Johnson's testimony. We recognize that Johnson's evidence does not represent the entire story, *see Stietz*, 375 Wis. 2d 572, ¶23, but Johnson's testimony, the testimony of Nicole and Christina, and the evidence that there was a nexus to the criminal activity of K.M. all provided more than "some evidence" to warrant a perfect self-defense instruction.

¶27 A reasonable factfinder could determine that Johnson reasonably believed that K.M. was going to kill him to prevent going to prison for having child pornography and that Johnson reasonably believed it necessary to discharge his handgun at K.M. to defend himself from an "imminent danger of death or great bodily harm." WIS. STAT. § 939.48(2)(a); *see also Stietz*, 375 Wis. 2d 572, ¶6. Of importance is that the jury found Johnson guilty on the least serious charge

13

presented to them: first-degree reckless homicide. Thus, the jury must have concluded that there was "some evidence" that the State failed to meet its burden to prove that Johnson committed first-degree or second-degree intentional homicide and failed to prove that Johnson was guilty of burglary.

¶28 Based on the evidence introduced at trial, we conclude that "some evidence" existed in support of Johnson's claim of self-defense, and, accordingly, the circuit court erroneously refused to instruct the jury on perfect self-defense.

### D. Harmless Error

¶29 Having concluded that the circuit court erred in refusing to instruct the jury on perfect self-defense, we next consider whether the error affected Johnson's "substantial rights," otherwise known as the harmless error rule. WIS. STAT. § 805.18(2). The harmless error inquiry raises a question of law that we review de novo. *See **Stietz***, 375 Wis. 2d 572, ¶62. "A defendant's substantial rights remain unaffected (that is, the error is harmless) if it is clear beyond a reasonable doubt that a rational jury would have come to the same conclusion absent the error or if it is clear beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." ***Id.***, ¶63.

¶30 The jury's acquittal of Johnson on first-degree intentional homicide, second-degree intentional homicide, and burglary suggests that the jury believed all or some of Johnson's testimony or resolved competing inferences in his favor, and, if given the perfect self-defense instruction, might have acquitted him on the charge upon which they convicted. *See **id.***, ¶64. Because self-defense could have absolved Johnson of his conviction for first-degree reckless homicide, the circuit court's refusal to give the perfect self-defense instruction affected Johnson's substantial

rights, and the error was not harmless. *See id.*, ¶66. Johnson is entitled to a new trial.[11]

### III. Lesser-Included Offenses

¶31 Johnson argues that the circuit court erred by refusing to instruct on second-degree reckless homicide and homicide by negligent use of a firearm. We review de novo whether a court should have instructed on a lesser-included offense. *State v. Jones*, 228 Wis. 2d 593, 598, 598 N.W.2d 259 (Ct. App. 1999). A court must engage in a two-part analysis to determine whether to instruct on a lesser-included offense. *See State v. Muentner*, 138 Wis. 2d 374, 387, 406 N.W.2d 415 (1987). First, a court must determine whether the crime is a lesser-included offense of the crime charged. *Id.* Where first-degree intentional homicide is charged, all homicide crimes under subch. I of WIS. STAT. ch. 940 are considered lesser-included offenses. *See* WIS. STAT. § 939.66(2). Thus, second-degree reckless homicide (WIS. STAT. § 940.06) and homicide by negligent use of a firearm (WIS. STAT.

---

[11] Johnson also argues that the circuit court violated his constitutional rights by barring admission of evidence related to Johnson's self-defense claim until after he testified. He claims that the circuit court's decision was contrary to *Brooks v. Tennessee*, 406 U.S. 605 (1972). In *Brooks*, the Supreme Court struck down a statute requiring a defendant who elects to testify in his or her own defense to testify as the first defense witness. *See id.* at 606. We conclude that *Brooks* is inapplicable to the present case as we are not faced with a statutory provision, and the factual circumstances are different as this case involved a self-defense claim, which required the court to consider the introduction of evidence in a different manner ("some evidence" standard) under the law. *Cf. Lee v. Murphy*, 41 F.3d 311, 313 (7th Cir. 1994) ("[S]ince [self-defense] implicate[s] the defendant's state of mind, he may not assert either unless he takes the stand and testifies concerning his state of mind."). Johnson has put forth no legal support for the proposition that the circuit court erred in barring the admission of *McMorris* evidence until after Johnson testified under the circumstances of this case, where Johnson was the only surviving witness. We conclude that it was properly within the circuit court's discretion to require Johnson to testify before allowing *McMorris* evidence as the privilege of self-defense requires a showing of "some evidence" of the defendant's state of mind.

§ 940.08) are both statutory lesser-included offenses of first-degree intentional homicide.

¶32    Next, a court must consider whether there is a reasonable basis in the evidence for a jury to acquit on the greater offense and to convict on the lesser offense. *Muentner*, 138 Wis. 2d at 387. "If both steps are satisfied, the [circuit] court should submit the lesser-included instruction to the jury if the defendant requests it." *State v. Morgan*, 195 Wis. 2d 388, 434, 536 N.W.2d 425 (Ct. App. 1995). A circuit court commits reversible error where it refuses to submit an instruction on a lesser-included offense that is supported by the evidence. *See State v. Weeks*, 165 Wis. 2d 200, 208, 477 N.W.2d 642 (Ct. App. 1991).

¶33    We are to view the evidence in a light most favorable to the defendant. *State v. Davis*, 144 Wis. 2d 852, 855, 425 N.W.2d 411 (1988); *Ross v. State*, 61 Wis. 2d 160, 172, 211 N.W.2d 827 (1973) (indicating that whether a reasonable construction of the evidence will support the defendant's theory is viewed in the most favorable light it will "reasonably admit … from the standpoint of the accused" (citation omitted)).

¶34    In this case, the circuit court agreed to instruct the jury on the lesser-included offense of first-degree reckless homicide as it determined that the jury could find that Johnson's conduct was reckless and not intentional. The circuit court refused, however, to give an instruction on second-degree reckless homicide. The statutory difference between first and second-degree reckless homicide is that to prove first-degree reckless homicide, the State must prove that the defendant not

only "caused the death [of the victim] by criminally reckless conduct"[12] but also under circumstances showing "utter disregard for human life." WIS JI—CRIMINAL 1022; *see also* WIS. STAT. § 940.02(1). Second-degree reckless homicide does not require the State to prove "utter disregard for human life." WIS JI—CRIMINAL 1022; *see also* WIS. STAT. § 940.06(1). The court refused to give second-degree reckless homicide as it determined that "no reasonable jury would find" that Johnson "did not show utter disregard for human life." The circuit court also refused to instruct on negligent homicide with a dangerous weapon, pursuant to WIS. STAT. § 940.08(1), as Johnson "testified he brought the loaded gun and that he brought it there to use to defend himself if necessary."

¶35    We conclude the court invaded the province of the jury in refusing to instruct the jury on the lesser-included offense of second-degree reckless homicide as there was a reasonable basis for a jury to acquit on the greater offenses of first and second-degree intentional homicide and first-degree reckless homicide and to convict on second-degree reckless homicide. The circuit court did not err, however, in refusing to instruct the jury on negligent homicide with a dangerous weapon as the evidence presented to the jury was that Johnson acted intentionally, not negligently, in trying to protect himself.

¶36    Johnson argues that the circuit court erred in its understanding of the "utter disregard" standard. Utter disregard requires "more than a high degree of negligence or recklessness." **Wagner v. State**, 76 Wis. 2d 30, 46, 250 N.W.2d 331 (1977) (citation omitted). To evince utter disregard, "[t]he mind must not only

---

[12] "Criminally reckless conduct" means "the conduct created a risk of death or great bodily harm to another person; and the risk of death or great bodily harm was unreasonable and substantial; and the defendant was aware that (his) (her) conduct created the unreasonable and substantial risk of death or great bodily harm." WIS JI—CRIMINAL 1022.

disregard the safety of another but be devoid of regard for the life of another…. A depraved mind lacks a moral sense, an appreciation of life, is unreasonable and lacks judgment." *Id.* (citation omitted). A person acting with utter disregard must possess "a state of mind which has no regard for the moral or social duties of a human being." *Id.* at 45 (citing *State v. Weso*, 60 Wis. 2d 404, 410, 210 N.W.2d 442 (1973)).

¶37 The "utter disregard" element is an objective one. *See State v. Jensen*, 2000 WI 84, ¶23, 236 Wis. 2d 521, 613 N.W.2d 170. The element may "be established by evidence of heightened risk ... or evidence of a particularly obvious, potentially lethal danger." *Id.*, ¶17. "Utter disregard for human life" may also be demonstrated by the defendant's actions and statements before, during, and after the crime. *See id.* "Utter disregard is proved through an examination of the act, or acts, that caused [injury] and the totality of the circumstances that surrounded that conduct." *State v. Edmunds*, 229 Wis. 2d 67, 77, 598 N.W.2d 290 (Ct. App. 1999). To determine whether the circumstances of the conduct showed utter disregard for human life, the jury is to consider: "what the defendant was doing; why the defendant was engaged in that conduct; how dangerous the conduct was; how obvious the danger was; whether the conduct showed any regard for life; and, all other facts and circumstances relating to the conduct." WIS JI—CRIMINAL 1020, 1022, 1250. In evaluating whether there is sufficient proof of utter disregard for human life, "[w]e also consider the type of victim, the victim's age, vulnerability, fragility, and relationship to the perpetrator. And finally, we consider whether the totality of the circumstances showed any regard for the victim's life." *Jensen*, 236 Wis. 2d 521, ¶24 (quoting *Edmunds*, 229 Wis. 2d at 77).

¶38   In *State v. Miller*, 2009 WI App 111, ¶40, 320 Wis. 2d 724, 772 N.W.2d 188, the court specifically addressed self-defense within the context of the utter disregard standard:

> While the jury rejected Miller's claim of self-defense and defense of others under WIS. STAT. § 939.48, the prosecutor acknowledged in his closing argument that Miller "was acting in self-defense, but he wasn't acting in lawful self-defense." It would appear undisputed that a reason, if not *the* reason, for Miller's conduct was to protect himself and his friends. This reason is inconsistent with conduct evincing utter disregard. *See Seidler v. State*, 64 Wis. 2d 456, 465-66, 219 N.W.2d 320 (1974) ("depravity of mind exists when the conduct causing [injury] demonstrates an utter lack of concern for the life and safety of another *and for which conduct there is no justification or excuse*").

¶39   As *Miller* suggests, it is generally inconsistent to instruct on imperfect self-defense, while at the same time declining a lesser-included instruction on the grounds that there are no circumstances where a jury could fail to infer utter disregard for human life.[13]   The State does not present any case law to the contrary supporting the circuit court's decision to deny giving the second-degree reckless homicide instruction. It argues only that because K.M. was shot five times that fact alone shows, beyond a reasonable doubt, an utter disregard for human life.   We disagree.   The number of shots, whether Johnson remembers what happened when he pulled the trigger, and how these facts relate to the "utter disregard" element is

---

[13] As was the case in *State v. Miller*, 2009 WI App 111, 320 Wis. 2d 724, 772 N.W.2d 188, the State conceded that the jury could find that Johnson could be convicted on second-degree intentional homicide based on imperfect self-defense, and the circuit court found that the need for an instruction to that effect was "obvious." Thus, there is no question in this case that the evidence could support a finding that Johnson acted with an actual belief that he was in imminent danger of death or great bodily harm at the time of the shooting. *See Head*, 255 Wis. 2d 194, ¶88 ("First-degree intentional homicide is mitigated to second-degree intentional homicide if a person intentionally causes a death because of an *actual* belief that the person is in imminent danger of death or great bodily harm, and an *actual* belief that the use of deadly force is necessary to defend [himself or] herself, even if both of these beliefs are not reasonable.").

for the jury to decide based on the totality of facts leading up to that moment. These facts do not establish "utter disregard" beyond a reasonable doubt.

¶40 Viewing the evidence in a light most favorable to the defendant, we conclude that there was a reasonable basis in the evidence for the jury to acquit on the greater offenses and to convict on the lesser offense of second-degree reckless homicide. Johnson was in K.M.'s house searching for child pornography—a crime that would mandatorily put K.M. in prison—based on Johnson's concern for the safety of his nieces and others in the community. These facts demonstrate a regard for the life, safety, and well-being of others. The evidence also does not mandate a finding that Johnson went to K.M.'s house with the intent to kill K.M. If Johnson had intended to kill K.M., he could have entered K.M.'s bedroom while he was sleeping and shot him; instead, Johnson was in the computer room for approximately two and one-half hours without using the weapon or threatening to use the weapon. Johnson testified that he was inexperienced with firearms and his eyes were closed during the shooting while he was trying to defend against K.M.'s attack. The evidence certainly entertains the argument that had K.M. never entered the computer room, Johnson would never have used the gun, and the shooting, while reckless, was not done with "utter disregard for human life."

¶41 Under the facts presented, there is a reasonable basis in the evidence for a jury to acquit on the greater offense and to convict on the lesser offense. *See Muentner*, 138 Wis. 2d at 387. As there was a reasonable basis for the instruction based on the unique factual circumstances of this case, it was within the province of the jury to determine whether Johnson's actions were reckless but devoid of a showing of "utter disregard for human life." Therefore, the circuit court erred by not instructing the jury on second-degree reckless homicide.

¶42 On the issue of failure to provide the jury with the instruction for homicide by negligent handling of a dangerous weapon, we agree with the circuit court and affirm its decision not to provide the jury with the lesser-included instruction of negligent homicide. The State argues that "there was no way a jury could have acquitted on the greater offenses but concluded his negligent gun-handling caused K.M.'s death" as Johnson admitted getting the gun, loading it, and bringing it with him, but Johnson could not remember shooting Johnson. We agree. Where a court instructs a jury as to several lesser degrees of homicide, a defendant must show "reasonable doubt as to all greater degrees of homicide on which the court plans to instruct the jury, before defendant may secure an instruction on the next lesser degree." *Harris v. State*, 68 Wis. 2d 436, 441, 228 N.W.2d 645 (1975). According to Johnson, he brought the loaded gun to K.M.'s house for his protection should he encounter K.M. Even under his self-defense claim, Johnson intended to shoot K.M. to protect himself; it was not a negligent act. *See Lofton v. State*, 83 Wis. 2d 472, 489, 266 N.W.2d 576 (1978). Johnson "was aware" that his conduct in bringing a loaded gun to K.M.'s house "created the unreasonable and substantial risk of death or great bodily harm." *Compare* WIS JI—CRIMINAL 1060 ("was aware") *with* WIS JI—CRIMINAL 1175 ("should have been aware"). We cannot conclude that there is a reasonable basis in the evidence for a jury to acquit on all the greater offenses and to convict on homicide by negligent handling of a dangerous weapon. The circuit court did not err.

## IV. Other-Acts Evidence

¶43 Johnson also argues that the circuit court erred in refusing to allow testimony that Johnson found child pornography on K.M.'s computer on October 25, 2016. The circuit court allowed Johnson to testify that "he went there to look for child pornography," but refused to allow any evidence on "what if

anything [Johnson] found." Johnson argues that the presence of child pornography "corroborated what witnesses were prepared to testify to" and that not allowing the jury to hear what Johnson found "likely … caused the jury to conclude that Johnson was untruthful" and "likely caused the jury to think that Johnson was lying in wait for K.M." The State argues that the circuit court properly prohibited the evidence as it did not meet all the elements for admissible other-acts evidence under *State v. Sullivan*, 216 Wis. 2d 768, 576 N.W.2d 30 (1998).[14] We disagree.

¶44 We review a circuit court's admission of other-acts evidence for an erroneous exercise of discretion. *Id.* at 780. "An appellate court will sustain an evidentiary ruling if it finds that the circuit court examined the relevant facts; applied a proper standard of law; and using a demonstrative rational process, reached a conclusion that a reasonable judge could reach." *Id.* at 780-81. "Although a circuit court generally has the discretion to deny the admission of evidence, that discretion is subject to constitutional limitations; a circuit court may not refuse to admit [relevant] evidence if doing so would deny the defendant's right to a fair trial." *State v. Wilson*, 2015 WI 48, ¶48, 362 Wis. 2d 193, 864 N.W.2d 52. Where a circuit court refuses to admit evidence and it implicates a defendant's constitutional right to present a defense, that is a question of constitutional fact and we review the circuit court's decision de novo. *Id.*, ¶47.

---

[14] The State points out that Johnson characterizes this evidence as *McMorris* evidence. We agree with the State that *McMorris* concerns the admission of instances of the victim's violent character: "When the issue of self-defense is raised in a prosecution for assault or homicide and there is a factual basis to support such defense, the defendant may, in support of the defense, establish what the defendant believed to be the turbulent and violent character of the victim by proving prior *specific instances of violence within his knowledge at the time of the incident*." *McMorris*, 58 Wis. 2d at 152 (emphasis added). Whether K.M. had child pornography in his possession would not speak to his turbulent or violent character; therefore, this evidence does not fall under *McMorris*. We will address the admission of the evidence as other-acts evidence under *State v. Sullivan*, 216 Wis. 2d 768, 576 N.W.2d 30 (1998).

¶45    WISCONSIN STAT. § 904.04(2) provides that "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith," but the statute "does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." The list of acceptable purposes found in § 904.04(2) is not exclusive. *Sullivan*, 216 Wis. 2d at 783; *see also* **State v. Payano**, 2009 WI 86, ¶63 & n.12, 320 Wis. 2d 348, 768 N.W.2d 832. Section 904.04(2) "favors admissibility in the sense that it mandates the exclusion of other crimes[, wrongs, or acts] evidence in only one instance: when it is offered to prove the propensity of the defendant to commit similar crimes[, wrongs, or acts]." **State v. Speer**, 176 Wis. 2d 1101, 1115, 501 N.W.2d 429 (1993). Courts apply a three-step analysis to determine the admissibility of other-acts evidence. *Sullivan*, 216 Wis. 2d at 771. Other-acts evidence is properly admitted if: (1) it is offered for a permissible purpose under § 904.04(2); (2) it is relevant under the two relevancy requirements found in WIS. STAT. § 904.01;[15] and (3) its probative value is not substantially outweighed by the risk of unfair prejudice under WIS. STAT. § 904.03. *Sullivan*, 216 Wis. 2d at 772-73.

¶46    We conclude that the circuit court erred in refusing to admit evidence that Johnson found child pornography on K.M.'s computer the night he was killed, and the failure to admit the evidence implicated Johnson's right to present a defense.

---

[15] "Relevance under WIS. STAT. § [] 904.01 has two components; the evidence must relate to some fact that is of consequence to the determination of the action, and it must have some tendency to make that fact more or less probable than it would be without the evidence." **State v. Davidson**, 2000 WI 91, ¶64, 236 Wis. 2d 537, 613 N.W.2d 606.

First, Johnson offered the evidence for a permissible purpose. At the very least, evidence that child pornography was found on K.M.'s computer on the night of his death provides evidence of K.M.'s state of mind, context, and K.M.'s motive[16] for attacking Johnson. *See* *State v. Hunt*, 2003 WI 81, ¶59, 263 Wis. 2d 1, 666 N.W.2d 771 (stating that one basis for other-acts evidence was to show victim's state of mind); *State v. C.V.C.*, 153 Wis. 2d 145, 162, 450 N.W.2d 463 (Ct. App. 1989) (same); *see also* *Payano*, 320 Wis. 2d 348, ¶¶63-64.

¶47 K.M. knew that Johnson had previously found child pornography on his computer years earlier; therefore, when he saw Johnson on his computer that morning K.M. knew what Johnson was looking for. K.M. knew if Johnson reported what he had found to police that he was facing multiple charges for child pornography and a mandatory prison sentence. If there was no child pornography to be found on K.M.'s computer, K.M. may not have "attacked"/"lunged" at Johnson. Thus, the fact that child pornography was in fact found on K.M.'s computer goes to support K.M.'s state of mind and gives context and support for Johnson's self-defense claim, providing evidence of why K.M. attacked Johnson. The evidence also goes to K.M.'s state of mind as it relates to the castle doctrine. The evidence was not offered to prove the character of K.M.; it was offered to prove the reasonableness of Johnson's belief that when K.M. found him in the computer room, K.M. needed to prevent that information from being given to police. We agree with Johnson that this constitutes a permissible purpose.

---

[16] "'Motive' is defined as the cause or reason that moves the will and induces action." *State v. Hurley*, 2015 WI 35, ¶71, 361 Wis. 2d 529, 861 N.W.2d 174 (citation omitted); *State v. Balistreri*, 106 Wis. 2d 741, 756, 317 N.W.2d 493 (1982) ("Motive explains the reason for a person's actions.").

¶48    Second, the evidence that K.M. possessed child pornography was relevant.  Johnson never argued that he did not kill K.M.; the central issue at trial was whether Johnson acted reasonably in self-defense when he shot K.M.  Thus, what Johnson "knew or reasonably believed at the time of the shooting was paramount to the 'determination of the action.'" *See Payano*, 320 Wis. 2d 348, ¶72.  The existence of child pornography on K.M.'s computer would have

> provided the jury with a greater understanding of the alleged circumstances that led to [K.M.] being shot.  The context in which the shooting took place was of consequence in this case because the circumstances leading up to the shooting were pertinent factors for the jury to consider when it determined the reasonableness of [Johnson's] actions.

*See id.*, ¶73 (collecting cases).  The existence of child pornography on K.M.'s computer made Johnson's claim of self-defense more probable than it would have been without the evidence, which was important for Johnson's defense against the charges.

¶49    Third, the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice.  "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  WIS. STAT. § 904.03.  The probative value of the evidence is largely dependent upon the relevance of the evidence:  "Evidence that is highly relevant has great probative value, whereas evidence that is only slightly relevant has low probative value." *Payano*, 320 Wis. 2d 348, ¶81.  "The term 'substantially' indicates that *if the probative value of the evidence is close or equal to its unfair prejudicial effect, the evidence must be admitted*." *Id.*, ¶80 (citation omitted).

25

¶50     We already determined that the child pornography was highly relevant as it provided context and support for Johnson's self-defense claim, the central issue in the case. Although there was a danger that upon hearing that K.M. had child pornography on his computer, the jury may have believed K.M. to be a bad person (although the jury had already heard testimony about K.M.'s physical and sexual abuse of Johnson and Nicole), K.M. was not on trial and the evidence was highly probative to Johnson's theory of defense.[17] Weighing the high degree of probative value against the danger of unfair prejudice, we conclude that the probative value of the existence of child pornography on K.M.'s computer substantially outweighs the danger of unfair prejudice to K.M. or the State.

¶51     An erroneous evidentiary ruling is reversible only if "a substantial right of the party is affected." WIS. STAT. § 901.03(1). "We construe this to mean that an error is harmless if the party benefitted by the error shows 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *State v. Monahan*, 2018 WI 80, ¶33, 383 Wis. 2d 100, 913 N.W.2d 894 (citation omitted). The State bears the burden of proving that the error was harmless. *Sullivan*, 216 Wis. 2d at 792. The State argues that because the circuit court properly declined to instruct on perfect self-defense, which we already determined was erroneous, "no harm occurred in preventing Johnson from admitting evidence to support his claim of self-defense." Further, the State argues that "the jury heard

---

[17]  If evidence does carry the danger of unfair prejudice, the circuit court can mitigate that danger and lessen the unfair prejudicial effect by utilizing any of the following: (1) 'stipulations'; (2) 'editing the evidence'; (3) 'limiting instructions'; and (4) 'restricting argument.' In fact, precedent suggests that cautionary jury instructions can go a long way in limiting the unfair prejudice that may result from the admission of other acts evidence.

*State v. Payano*, 2009 WI 86, ¶99, 320 Wis. 2d 348, 768 N.W.2d 832 (citations omitted).

evidence from Johnson and police that Johnson reported discovering child pornography on K.M.'s computer years earlier" and still convicted him. As we previously discussed, the fact that Johnson found child pornography on K.M.'s computer on October 25, 2016, was highly relevant and probative to Johnson's defense in this case, and we cannot say that the error in refusing its admission did not contribute to the verdict obtained beyond a reasonable doubt. The State failed to meet its burden that the error was harmless.

## V. Conclusion

¶52     As the circuit court erred in denying Johnson's request to instruct the jury on perfect self-defense and second-degree reckless homicide and failed to allow into evidence that child pornography was found on K.M.'s computer on October 25, 2016, we reverse and remand[18] for a new trial.

*By the Court.*—Judgment reversed and cause remanded with directions.

---

[18] We note that on remand, pursuant to ***Green v. United States***, 355 U.S. 184 (1957), the State would be precluded from retrying Johnson on all counts contained in the original Information under the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution. In ***Green***, the jury convicted the defendant on the lesser-included offense of second-degree murder without returning a verdict on the charged offense of first-degree murder. ***Green***, 355 U.S. at 186. The United States Supreme Court concluded that this result was an "implicit acquittal" on the greater offense of first-degree murder, barring retrial. ***Id.*** at 190. The defendant "was forced to run the gantlet once on that charge and the jury refused to convict him. When given the choice between finding him guilty of either first or second degree murder it chose the latter." ***Id.***; *see also* ***Price v. Georgia***, 398 U.S. 323, 329 (1970) ("[T]his Court has consistently refused to rule that jeopardy for an offense continues after an acquittal, whether that acquittal is express or implied by a conviction on a lesser included offense when the jury was given a full opportunity to return a verdict on the greater charge." (footnote omitted)). The jury found Johnson guilty of first-degree reckless homicide, but acquitted Johnson of burglary and failed to return a verdict on first and second-degree intentional homicide, both greater offenses of first-degree reckless homicide, which served as an "implicit acquittal" on those charges.